**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Irving RICH, Defendant-Appellant.**

**No. 26447.**

United States Court of Appeals
Fifth Circuit.

Feb. 21, 1969.

Rehearing Denied March 21, 1969.

Certiorari Denied May 26, 1969.
See 89 S.Ct. 1775.

Barry Garber, Miami, Fla., for defendant-appellant.

William A. Meadows, U. S. Atty., Michael J. Osman, by Jose E. Martinez,

Asst. U. S. Attys., Miami, Fla., for plaintiff-appellee.

Before BELL, AINSWORTH and GODBOLD, Circuit Judges.

AINSWORTH, Circuit Judge:

Pursuant to new Rule 18 of the Rules of this Court, we have concluded that this case is of such character as not to justify oral argument. Accordingly, the Clerk has been directed to place the case on the summary calendar provided for such matters, and to notify the parties in writing.[1]

Appellant was indicted on three counts of interstate transportation of obscene matter for sale and distribution in violation of 18 U.S.C. §§ 1462 and 1465, and he was tried without a jury. The District Court found appellant guilty on all counts, and sentenced him to six months' imprisonment and an additional four years on probation. Appellant attacks his conviction on the ground that the Trial Judge erred in denying a motion to suppress evidence seized under the authority of a search warrant.[2] After a thorough consideration of the affidavits upon which the search warrant was based, we affirm the decision of the District Court.

The affidavits, pursuant to which the search warrant issued, were made on September 14, 1967, by William P. Kelly and John C. Phelps, Special Agents of the Federal Bureau of Investigation.

1. In order to establish a docket control procedure, the Fifth Circuit adopted new Rules 17–20 on December 6, 1968. See Groendyke Transport, Inc. v. Davis, 5 Cir., 1969, 406 F.2d 1158 [January 2].

2. Rule 41(e), Federal Rules of Criminal Procedure:

"(e) Motion for Return of Property and to Suppress Evidence. A person aggrieved by an unlawful search and seizure may move the district court * * * for the return of the property and to suppress for the use as evidence anything so obtained on the ground that * * * (4) there was not probable cause for believing the existence of the grounds on which the warrant was issued * * *. The judge shall receive evidence on any issue of fact necessary to the decision of the motion. If the motion is granted the property * * * shall not be admissible in evidence at any hearing or trial. The motion to suppress evidence may also be made in the district where the trial is to be had. The motion shall be made before trial or hearing unless opportunity therefor did not exist or the defendant was not aware of the grounds for the motion, but the court in its discretion may entertain the motion at the trial or hearing."

In conformity with this rule, the District Court held an evidentiary hearing, prior to the commencement of the trial, before it ruled on appellant's motion to suppress the evidence.

These Special Agents asserted that they had reason to believe that three cardboard cartons, addressed to "Mr. Rich, 530 N. W. 26th St., Miami, Fla.," contained obscene books, pamphlets, pictures and motion pictures. These cartons were allegedly on the premises of the Greyhound Bus Terminal, having been transported in interstate commerce from Newark, New Jersey, and/or New York City, New York, to Miami, Florida, by the Greyhound Bus Lines. In order to establish the grounds for the issuance of the search warrant, Special Agent Phelps stated that he had received information from a confidential informant, "who has on repeated occasions in the past furnished reliable and credible information," that "Irvin Rich," living at 7901 S. W. 14th Terrace, Dade County, Florida, had sold the informant numerous obscene films, photographs, and drawings, and one obscene book. These items allegedly depicted numerous sexual acts. Furthermore, Special Agent Phelps stated that he had examined some of the obscene items that the informant had purchased, and that they, in fact, conformed with the informant's description of them. Finally, the informant advised Phelps that Rich admitted to the informant that he sells obscene materials, that he received shipments of such materials from sources in New York City via Greyhound bus, and that he was going to New York City in order to check on a shipment of obscene items that had failed to arrive.

Special Agent Kelly stated in his affidavit that he had personally observed appellant board a plane at the Miami International Airport, which was bound for Newark, New Jersey, and that three days later he saw appellant arrive at Miami International Airport, aboard a nonstop flight from Newark, New Jersey. The following day, Kelly observed the three cardboard cartons discussed above.

███ The Fourth Amendment of the Constitution of the United States requires that a search warrant issue only upon probable cause. See, e. g., Dumbra v. United States, 268 U.S. 435, 441, 45 S.Ct. 546, 548–549, 69 L.Ed. 1032 (1925); Gurleski and Villafranca v. United States, 5 Cir., 1968, 405 F.2d 253.[3] Probable cause is deemed to exist "where the facts and circumstances within the affiant's knowledge, and of which he has reasonably trustworthy information, are sufficient unto themselves to warrant a man of reasonable caution to believe that an offense has been or is being committed." Berger v. State of New York, 388 U.S. 41, 55, 87 S.Ct. 1873, 1881, 18 L.Ed.2d 1040 (1967).[4] There only need be a probability of criminal activity rather than a prima facie showing, and a magistrate's determination of probable cause "should be paid great deference by reviewing courts * * *." Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969). See also Beck v. State of Ohio, 379 U.S. 89, 96, 85 S.Ct. 223, 228, 13 L.Ed.2d 142 (1964); Jones v. United States, 362 U.S. 257, 270–271, 80 S.Ct. 725, 735–736, 4 L.Ed.2d 697, 78 A.L.R.2d 233 (1960).

In cases such as the present one, where a search warrant has been secured with complete or partial reliance on information provided by an informant, courts have tended to be critical in ascertaining whether the requirement of probable cause has been demonstrated. Note,

3. See generally 8A Moore, Federal Practice ¶ 41.04 (2d ed. 1968); Symposium: Constitutional Problems in the Administration of Criminal Law, Search and Seizure, 59 Nw.U.L.Rev. 611 (1964).

4. See also, e.g., Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 288, 69 L.Ed. 543, 39 A.L.R. 790 (1925); Terry v. State of Ohio, 392 U.S. 1, 35, 88 S.Ct. 1868, 1887, 20 L.Ed.2d 889 (1968) (Mr. Justice Douglas, dissenting), and cases cited therein. See generally 8A Moore, Federal Practice ¶ 41.04, p. 41–13 (2d ed. 1967); Note, Testing the Factual Basis for a Search Warrant, 67 Col.L.Rev. 1529 (1967); Symposium: Constitutional Problems in the Administration of Criminal Law, Search and Seizure, 59 Nw.U.L.Rev. 611 (1964).

Testing the Factual Basis for a Search Warrant, 67 Col.L.Rev. 1529, 1532 (1967). Thus, in Spinelli v. United States, 89 S.Ct. at 588, the Supreme Court, in applying and explaining the rules laid down in Aguilar v. State of Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), held that there was insufficient information presented to the magistrate to justify a finding of probable cause:

> "[The magistrate] must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration? * * *
>
> "* * * Though the affiant swore that his confidant was 'reliable,' he offered the magistrate no reason in support of this conclusion. Perhaps even more important is the fact that *Aguilar's* other test has not been satisfied. The tip does not contain a sufficient statement of the underlying circumstances from which the informer concluded that Spinelli was running a bookmaking operation. We are not told how the FBI's source received his information—it is not alleged that the informant personally observed Spinelli at work or that he had ever placed a bet with him. * * *"

In sharp contrast to *Spinelli*, the affidavits in the present case state reasons for the assertion that the informant is reliable; and, indeed, it is made clear that the informant's information was based on personal observation, including the purchase of obscene items from appellant. Beyond this, Special Agent Phelps personally examined some of the obscene materials purchased by the informant, and Special Agent Kelly observed appellant's departure and return to Miami—all of which corroborated the informant's tip. On this basis, we conclude that there was probable cause for the issuance of the search warrant.

Finally, appellant contends that a finding of probable cause is negat-ed by the fact that the cartons in question were addressed to a "Mr. Rich" at one address, while the affidavits mention an "Irvin Rich" at another address, and that there was no showing that they were the same person. This assertion is frivolous in the light of the corroborated information supplied by the informant, and the personal observations of Special Agent Kelly. While probable cause, in this context, means something more than a mere suspicion that appellant was violating the federal obscenity laws, it does not require evidence that would support a conviction. See Brinegar v. United States, 338 U.S. 160, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); 8A Moore, Federal Practice ¶ 41.04 (2d ed. 1968).

Affirmed.