390 A.2d 279

**COMMONWEALTH of Pennsylvania, Appellant,**

**v.**

**Ruth Ellen HABERMAN, and David Andrew Ritenour, Appellees.**

Superior Court of Pennsylvania.

Argued Nov. 16, 1977.

Decided July 12, 1978.

128

Charles W. Johns, Assistant District Attorney, with him Robert E. Colville, District Attorney, Pittsburgh, for Com., appellant.

H. David Rothman, Pittsburgh, with him Charles F. Scarlata, Pittsburgh, for appellees.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

CERCONE, Judge:

█ Ruth Haberman and David Ritenour were charged with violations of the Controlled Substance, Drug, Device and Cosmetic Act as the result of a search of the residence of Ruth Haberman. The search was conducted pursuant to a warrant issued on the basis of information received from a confidential informant. The lower court's order suppressing the evidence gathered in the search triggered this Commonwealth appeal.[1]

█ The two-pronged test for determining whether information received from a confidential informant supplies probable cause for the issuance of a search warrant is well known: the issuing authority must be apprised of the underlying circumstances from which the informant drew his conclusions that criminal activity was taking place, and the

---

1. As the suppression order effectively terminated the prosecution, it is appealable by the Commonwealth. *Commonwealth v. Bosurgi*, 411 Pa. 56, 190 A.2d 304, cert. denied 375 U.S. 910, 84 S.Ct. 204, 11 L.Ed.2d 149 (1963).

issuing authority must be provided with information justifying a conclusion that the informant is reliable. *Spinelli v. United States*, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); *Aguilar v. Texas*, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). Pennsylvania Rule of Criminal Procedure 2003 imposes the additional requirement that the affidavits themselves must show that these tests were satisfied.

*Spinelli, Aguilar*, and most cases dealing with search warrants issued on the basis of revelations of informants deal with situations in which the affiant, usually a police officer, recites hearsay information received from an unseen and unidentified informant. The instant case is different. The warrant is supported by two affidavits: The sworn application itself, signed by a police officer, and a supplemental affidavit, signed by the informant with an X. The supplemental affidavit includes the following statement:

"I hereby swear that I went to the residence of RUTH HABERMAN, 5701 Weedmont St., Pittsburgh, Pa. 15217 (first floor dwelling) no later than five days ago and at that time, was under the surveillance of Tprs. Ceyba and Weis. I was admitted by Ruth HABERMAN and during the course of my stay, which was at least fifteen minutes, I had occasion to observe approximately two pounds of marijuana located in a closet area off the rear bedroom. I also observed another approximate two pounds of marijuana located in a dresser drawer of this rear bedroom. This marijuana was contained in plastic zip lock bags and HABERMAN stated that it was marijuana and was for sale for a price of [the price was deleted]. I am completely aware of the look, texture and smell of marijuana and have on at least twenty prior occasions, been given the opportunity to purchase this marijuana for myself, from Ruth HABERMAN. I have also observed a large scale utilized by HABERMAN for the weighing of this marijuana.

After departing the HABERMAN residence, I met with Tprs. Ceyba and Weis and gave the above information."

The prosecuting officer's affidavit confirms that a surveillance was taken and that the informant related to the participating officers the information contained in the anonymous supplemental affidavit. The Commonwealth impliedly concedes that the *Aguilar-Spinelli* safeguards are not made inapplicable by the fact that the informant was the affiant. We are inclined to agree, at least where anonymous informants are concerned, since Rule 2006, Pa.R.Crim.P. requires application for search warrants to include the name of the affiant. Badge numbers of police affiants and addresses of private affiants are also required. Although the rule does not explicitly state that it applies to supplemental affidavits, we can perceive no rational basis for any distinction, and we believe no distinction was intended, particularly since the rule is titled "Form of Affidavit and Warrant." Although X's affidavit did not meet the requirements of Rule 2006,[2] the officer's affidavit incorporated it by reference. Thus, if reliability were demonstrated, we could uphold the warrant on the basis of the officer's affidavit. (It is undisputed that the magistrate was adequately informed of the basis of the informant's conclusions.)

Four ways of proving reliability have been accepted by courts in the past:

(1) accurate information previously given by the informant,

(2) corroboration of the informant's story by other sources,

(3) personal and recent observations of the informant which amount to a declaration against interest, and

(4) the reputation of the defendant with the police if supported by prior events within the affiant's own knowledge.

*Commonwealth v. Kaschik*, 235 Pa.Super. 388, 334 A.2d 519 (1975).

**2.** We express no opinion as to whether the use of alias affidavits to avoid the requirements of *Aguilar* and *Spinelli* is constitutionally permissible. But see *Commonwealth v. Hall*, 451 Pa. 201, 302 A.2d 342 (1973).

■ The Commonwealth relies solely on the theory that the informant's statement was a declaration against penal interest. The Commonwealth admits that the affidavit discloses no criminal activity on the part of the informant, but insists that the giving of the statement itself constitutes a declaration against penal interest. The part of the affidavit relied upon for this theory reads as follows:

"I am an unpaid informant and wish to remain anonymous because I fear for my life. Tprs. R. J. Ceyba and A. W. WEIS have explained to me that giving false information to the police under oath is a criminal offense and can amount to perjury, false swearing and false reports to law enforcement authorities, if false, with penalties in excess of ten years in jail. I understand this and know that I can be prosecuted as a basis of this statement if I am not telling the truth and that it can be used against me in a court of law. I fully understand this."

The Commonwealth's position is devoid of merit. The fact that the making of the statement could create a liability does not make it a declaration against interest; the fact stated must be against penal interest. *Commonwealth v. Colon*, 461 Pa. 577, 337 A. 554 (1975); cert. denied *Colon v. Pennsylvania*, 423 U.S. 1056, 96 S.Ct. 788, 46 L.Ed.2d 645. In *Commonwealth v. Slater*, 242 Pa.Super. 255, 363 A.2d 1257 (1976), we noted that to be a declaration against penal interest statement must include an admission that the informant somehow participated in criminal activity. The Commonwealth urged us in *Slater* to hold that a showing that an informant was warned of the penalties for false swearing establishes his reliability. We declined to do so, observing that:

". . . [T]he course from an informant's false statement to his conviction is a long and tortuous one. Statistically, the chances of such a prosecution are almost nonexistent."

In *Slater*, the affidavit stated that the affiant knew the informant's name, address, phone number, social security number, age, current whereabouts, and place of employ-

ment.   In the instant case, nothing in either affidavit indicates that X's real name is known to the police or to the magistrate.  The possibility of prosecution is, therefore, even more remote than it was in *Slater.*

The Commonwealth attempts to distinguish *Slater* by pointing out that X was placed under oath by the magistrate.  (The informant in *Slater* was placed under oath by the police.)  Its theory seems to be that the warning of perjury penalties plus the magistrate's observation of the informant's demeanor establish reliability.

We refer the Commonwealth to the language of the court in *Commonwealth v. Alvarez,* 208 Pa.Super. 371, 375, 222 A.2d 406, 407 (1966):

".    .    . [A] procedure, in which a magistrate accepts an affiant's conclusions and 'rubber-stamps' a search warrant, is not constitutionally permitted."

To allow a magistrate's observations of demeanor to fill in the gaps in the written information sworn to would violate the mandate of *Alvarez,* and would contravene the requirement of Rule 2003 that the affidavit be self-sustaining. Furthermore, although oral testimony before a magistrate may provide probable cause if it is reduced to an affidavit before the warrant issues (see Comment to Rule 2003), we cannot assume this procedure was followed here.  The common practice is for the police to prepare the affidavits before approaching the magistrate.  Under this procedure, the opportunity to observe the demeanor of the affiant is short-lived.

In response to the Commonwealth's strenuous argument that the procedure in the instant case was necessitated by the unavailability of other methods of ascertaining the informant's reliability, we wish to point out that the information could have been corroborated and X's reliability established by having X purchase marijuana while visiting the apartment during the surveillance.  Such a procedure was held in *Commonwealth v. Herron,* 243 Pa.Super. 319, 365 A.2d 871 (1976) to be constitutionally unobjectionable, not-

134

withstanding a contention that the subterfuge involved violated the defendant's Fourth Amendment rights. Why this was not done in the instant case is not clear to us.

Order affirmed.

PRICE and VAN der VOORT, JJ., dissent.

WATKINS, former President Judge, did not participate in the consideration or decision of this case.