COURT OF APPEALS OF VIRGINIA


Present: Chief Judge Fitzpatrick, Judges Elder and Bray
Argued at Chesapeake, Virginia


COMMONWEALTH OF VIRGINIA

MEMORANDUM OPINION[*] BY
v.    Record No. 2065-99-3        JUDGE RICHARD S. BRAY
                                    FEBRUARY 29, 2000
GEORGE WINSTON SAGE


FROM THE CIRCUIT COURT OF PITTSYLVANIA COUNTY
Charles J. Strauss, Judge

Kathleen B. Martin, Assistant Attorney
General (Mark L. Earley, Attorney General, on
brief), for appellant.

Jon I. Davey for appellee.


George Winston Sage (defendant) was before the trial court on

indictments alleging rape, forcible sodomy, attempted rape,

attempted forcible sodomy, and two counts of object sexual

penetration and aggravated sexual battery. Defendant successfully

moved the court to suppress evidence obtained during the execution

of two search warrants, arguing that the affidavit supporting the

initial warrant did not establish the requisite probable cause.

The Commonwealth appeals pursuant to Code § 19.2-398, contending

that the affidavit was sufficient but, if not, the "good faith

exception" saves the evidence from the operation of the

exclusionary rule. We agree and reverse the order.

_____

* Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

"It is well established that on appeal the burden is on the appellant to show, considering the evidence in a light most favorable to [defendant], that the [granting] of a motion to suppress constitutes reversible error." Commonwealth v. Tart, 17 Va. App. 384, 390-91, 437 S.E.2d 219, 223 (1993). "Questions of . . . probable cause to . . . search are subject to de novo review on appeal. 'In performing such analysis, we are bound by the trial court's findings of historical fact unless "plainly wrong" or without evidence to support them[.]'" Archer v. Commonwealth, 26 Va. App. 1, 8, 492 S.E.2d 826, 830 (1997) (citations omitted).

## I.

Pittsylvania County Detective Boyd Arnold, III, while investigating a complaint that defendant, a convicted felon, had sexually assaulted three minor girls, learned that defendant possessed a "handgun." Acting on information obtained during questioning of the mother (mother) and adult half-sister (sister) of the alleged victims, Arnold secured a search warrant for defendant's residence, supported, in pertinent part, by the following affidavit:

> During my investigation of [defendant] I was
> told by [mother] and [sister] that he was in
> possession of a handgun. The handgun was
> described as a semi-automatic pistol.
> [Mother] told me that [defendant] would
> carry the handgun on his person, kept in the
> vehicle, or in the house . . . . A criminal
> history check showed two felony convictions
> (05/18/83 & 01/14/85).
>
> *       *       *       *       *       *       *

-

> The mother and . . . sister . . . have seen the handgun in the possession of [defendant] . . . . Both of them are adults and they described a handgun to me when I spoke with them on 09/30/98. [Mother] told me that she last saw the handgun about 2 months ago.
>
> *     *     *     *     *     *     *
>
> The informer's [sic] told me that they have known [defendant] for about 5-7 years and have seen the handgun in his possession. The informers appear to have some knowledge of what and how a handgun works. The informer's [sic] did not tell me anything about the handgun until I questioned them about it.

Upon execution of the warrant on October 21, 1998, police discovered no guns but observed "children's underwear" and various "cassette tapes" on the premises. Aware that the victims had missed certain articles of underclothing after "overnight visits" at defendant's home and that defendant had been surreptitiously "recording [the] sexual relations" of other houseguests, Arnold obtained and executed a second search warrant, which resulted in the seizure of "children's panties" and numerous cassette tapes.

In granting defendant's motion to suppress all evidence resulting from both searches, the trial court determined that "the statements . . . by the informants appear overly general," unsupported by "facts from which the Magistrate could determine that at the time the warrant was issued, on October 19th, 1998, there was any reasonable likelihood that a firearm would be

-

located in the residence of the defendant" or "how [the informants] knew the defendant 'carried the handgun on his person . . . or [kept it] in the house.'" The court, therefore, concluded that "the facts contained in the Affidavit . . . failed to provide . . . the Magistrate . . . probable cause to issue the search warrant." The court likewise rejected application of the good faith exception established by United States v. Leon, 468 U.S. 897 (1984), reasoning that "the warrant was based on an Affidavit 'so lacking in indicia of probable cause' as to render official belief in its existence unreasonable[.]"

## II.

Assuming, without deciding, that the affidavit failed to provide the requisite probable cause, we, nevertheless, apply the good faith exception of Leon to preclude operation of the exclusionary rule. "'The exclusionary rule is designed to deter police misconduct rather than to punish the errors of judges and magistrates. In the ordinary case, an officer cannot be expected to question the magistrate's probable-cause determination or his judgment that the form of the warrant is technically sufficient.'" Tart, 17 Va. App. at 390, 437 S.E.2d at 222 (citation omitted). Thus, "[t]he deterrent effect of the exclusionary rule 'is absent where an officer, acting in objective good faith, obtains a search warrant from a magistrate and acts within the scope of the warrant.'" Janis v.

-

<u>Commonwealth</u>, 22 Va. App. 646, 653, 472 S.E.2d 649, 653 (1996) (citation omitted).

The good faith exception is not available in the following four instances:

> (1) [W]here the magistrate was misled by information in the affidavit which the affiant knew was false or should have known was false, (2) the issuing magistrate totally abandoned his judicial role, (3) the warrant was based on an affidavit "so lacking in indicia of probable cause" as to render official belief in its existence unreasonable or (4) where the warrant was so facially deficient that an executing officer could not reasonably have assumed it was valid.

<u>Robinson v. Commonwealth</u>, 19 Va. App. 642, 647, 453 S.E.2d 916, 918 (1995). In declining to apply <u>Leon</u> to the instant search, the trial court, and defendant on appeal, rely on the third exception to the doctrine. However, our review of the affidavit discloses an "objectively reasonable belief that probable cause existed" in support of the warrant.

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

-

Illinois v. Gates, 462 U.S. 213, 238-39 (1983) (citation omitted).  The reliability of an informer's tip depends "on the nature of the informer and the manner in which the information provided by the informer reaches the magistrate."  Polston v. Commonwealth, 24 Va. App. 738, 745, 485 S.E.2d 632, 635 (1997). "If the informer is a disinterested citizen who is either the victim or eyewitness of a crime, the magistrate is permitted to infer that reasonable information obtained from the citizen is reliable."  Id.

Here, the informants, both citizens known to the affiant/Arnold as adult relatives of the several infant victims, advised him, during questioning, that defendant, a convicted felon, "was in possession of a handgun."  Both women had "known" defendant for five to seven years, had "some knowledge of what and how a handgun works" and "had seen" defendant in possession of a specifically described "pistol."  The mother stated that defendant "would carry the handgun on his person" or "kept [it] in the vehicle, or in the house" and had "last" seen the weapon "about two months ago."

Thus, like Leon, the warrant in issue was not dependent upon a "bare bones" affidavit.  To the contrary, the instrument recited detailed information provided by citizen informers, based upon personal observations not too remote in time[1] and

---

[1]     "The ultimate criterion in determining the degree of evaporation of probable cause,

-

deemed reliable, that defendant feloniously possessed a firearm. Clearly, "the affidavit 'provided evidence sufficient to create disagreement among thoughtful and competent judges as to the existence of probable cause.' Therefore, we cannot say that the officers could not have 'harbored an objectively reasonable belief in the existence of probable cause.'" Tart, 17 Va. App. at 390, 437 S.E.2d at 223 (citations omitted).

Accordingly, we reverse the order suppressing the evidence and remand for further proceedings consistent with this opinion.

Reversed and remanded.

---

however, is not case law but reason. The likelihood that the evidence sought is still in place is a function not simply of watch and calendar but of variables that do not punch a clock: the character of the crime (chance encounter in the night or regenerating conspiracy?), of the criminal (nomadic or entrenched?), of the thing to be seized (perishable and easily transferable or of enduring utility to its holder?), of the place to be searched (mere criminal forum of convenience or secure operational base?), etc. The observation of a half-smoked marijuana cigarette in an ashtray at a cocktail party may well be stale the day after the cleaning lady has been in; the observation of the burial of a corpse in a cellar may well not be stale three decades later. The hare and the tortoise do not disappear at the same rate of speed."

Turner v. Commonwealth, 14 Va. App. 737, 745, 420 S.E.2d 235, 240 (1992) (quoting Donaldson v. State, 420 A.2d 281, 286 (Md. App. 1980) (citation omitted)).

-